**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ROBERT WILSON,

        Plaintiff,

vs.                                     Case No. 3:05-cv-469-J-32TEM

SUZUKI OF ORANGE PARK, INC.,
a Florida profit corporation, d/b/a
SUZUKI SEA DOO OF ORANGE PARK,

        Defendant.

_____

**ORDER**[1]

This case is before the Court on plaintiff Robert Wilson's motion to remand (Doc. 6). Defendant Suzuki of Orange Park, Inc., a Florida profit corporation, d/b/a Suzuki Sea Doo of Orange Park, has filed a response (Doc. 10). In considering the motion, the Court determined there were issues not addressed by the parties' briefs and, following issuance of an interim Order (Doc. 12), the Court conducted a hearing to solicit the parties' views on those issues. Having now fully considered the matter, for the reasons stated below, plaintiff's motion to remand is **denied**.

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

## I. Background

Plaintiff filed his complaint in the Circuit Court in and for Clay County, Florida on April 14, 2005 (Doc. 2), seeking a trial by jury.  The complaint alleges that in August 2002, plaintiff brought his 2000 RX Sea Doo ("Sea Doo") to defendant for repairs and/or maintenance.  Plaintiff alleges that defendant, at all times material, had an obligation to use reasonable care to repair and/or maintain the Sea Doo, and to perform all repairs and/or maintenance in a workmanlike manner.  On June 26, 2004, plaintiff put the Sea Doo in the water for use.  While plaintiff was on the Sea Doo near the Black Creek and Main Street boat ramp, the steering malfunctioned.  This caused plaintiff to crash and suffer personal injuries.  Plaintiff took the Sea Doo out of the water immediately after the incident and discovered that an important bolt connecting the waterjet to the steering assembly was missing.  Plaintiff alleges the cause of the steering malfunction was because the bolt had been negligently installed and/or maintained so as to either break or vibrate itself loose from its housing.

Plaintiff's complaint alleges two causes of action.  Count I alleges negligence based on defendant's breach of its duty to install and maintain the subject bolt in a reasonably careful and workmanlike manner, and its duty to take reasonable precautions to warn plaintiff to check the subject bolt, as the steering mechanism would not work properly without it.  Count II alleges breach of defendant's contract

with plaintiff to maintain and/or repair the Sea Doo in a workmanlike manner. Plaintiff claims that the crash was a direct and proximate result of these breaches and that he has suffered injuries as a result. Defendant removed the case to this Court on May 20, 2005 (Doc.1). On June 6, 2005 plaintiff moved the Court to remand the case to Clay County Circuit Court (Doc. 6). Plaintiff contends that defendant's removal of this case is improper because the Court lacks jurisdiction over both the tort claim and the contract claim. Defendant asserts this case falls under the Court's admiralty jurisdiction.

## II. Discussion

"While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). The removing defendant has the burden of proving that federal jurisdiction exists. Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1314 (11th Cir. 2002). In this case, there are two related questions to be addressed. First, do either of plaintiff's claims sound in admiralty? And second, assuming that at least one claim does sound in admiralty, is this case properly before this Court, given that plaintiff invoked a state law remedy (trial by jury) which would render this case "unremovable," but then failed to contest the removal on that ground?

**A. Admiralty Jurisdiction**

A party seeking to invoke admiralty jurisdiction over a tort claim must satisfy conditions of both location and connection with maritime activity. <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 534 (1995). "A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." <u>Id.</u> In applying the connection test, "a court first must assess the general features of the type of incident involved to determine if the incident has a potentially disruptive impact on maritime commerce." <u>Id.</u> (internal quotation omitted). If so, the court must determine whether the character of the "activity giving rise to the incident shows a substantial relationship to traditional maritime activity." <u>Id.</u> (internal quotation omitted).

To determine whether a contract claim falls under the court's admiralty jurisdiction, a party must show the contract is maritime in nature and character, rather than looking at the place of the contract's performance or whether a ship or vessel was involved in the dispute. <u>Norfolk S. Ry., Co. v. Kirby</u>, 125 U.S. 385, 393 (2004).

**1. Admiralty Jurisdiction Over Count I (Tort Claim)**

**a. Location Test**

Plaintiff asserts that the location test has not been met because the alleged negligence occurred on land rather than on navigable waters. However, the Eleventh Circuit has stated "both logic and precedent compel rejection" of this argument. See Mink v. Genmar Indus., Inc., 29 F.3d 1543, 1546 (11th Cir. 1994). In Mink, the plaintiff was injured while at sea because defendant installed defective handrails on the boat causing the plaintiff to fall and slam into the deck of the boat. Id. at 1545-46. The Eleventh Circuit found this would clearly fall within the court's admiralty jurisdiction. Id. at 1546. The Court reasoned that when a defect could not have manifested itself, and the injury could not have occurred until the vessel was actually operated as a vessel in navigation, the tort is logically a maritime tort. Id. Since plaintiff in this case could not have been injured by the alleged negligence of defendant until operating the Sea Doo on water, the Court finds the tort alleged here satisfies the location test.[2]

---

[2] The Court had some initial hesitation with this conclusion because neither party put forth evidence upon which the Court could determine that the waterway on which the injury occurred was navigable (the complaint having described the incident as occurring "at or near the Black Creek and Main Street boat ramp," but without actually stating that the waterway at issue was Black Creek), an obvious prerequisite to finding that admiralty jurisdiction would lie. Grubart, 513 U.S. at 534. However, during the November 4, 2005 hearing, defendant's counsel stated (without objection by plaintiff) that the waterway at issue is Black Creek, a navigable waterway used for shipping, which feeds into the St. Johns River and

### b. Connection Test

To satisfy the connection test, two prongs must be met: the activity must have a substantial relationship to traditional maritime activity and it must have a potentially disruptive impact on maritime commerce. Grubart, 513 U.S. at 534. Plaintiff argues that neither prong of the connection test has been met. Citing a Fourth Circuit case, plaintiff asserts the tort claim does not have a substantial relationship to maritime activity and that "an allegation of a navigational error appears to be the key to admiralty jurisdiction when dealing with a small pleasure craft." Doc. 9 at 4 (citing Souther v. Thompson, 754 F.2d 151, 153 (4th Cir. 1985)).

However, in Mink, the Eleventh Circuit held that to determine whether activity was a traditional maritime activity the focus should be on the general nature of the activity. Mink, 29 F.3d at 1546. The Court held that because the relevant activity was the navigation of a vessel on navigable waters, the facts in Mink were the very paradigm of traditional maritime activity. Id. Here, plaintiff was operating (navigating) his Sea Doo in the water. The Court finds that this activity falls within the paradigm of traditional maritime activity as analyzed by the Eleventh Circuit in Mink.³

---

out into the Atlantic Ocean. The Court is therefore satisfied that the waterway at issue is a "navigable waterway" for purposes of admiralty jurisdiction.

³   Plaintiff relies on Souther v. Thompson, 754 F.2d 151 (4th Cir. 1985), for the proposition that the violation of a navigational rule is imperative to show that a tort

The second prong of the connection test asks whether the activity has a potentially disruptive impact on maritime commerce. In <u>Sea Vessel Inc. v. M/V Sea Lion V</u>, 23 F.3d 345, 350 (11th Cir. 1994), the Eleventh Circuit addressed whether a fire on a vessel docked at a marina on navigable waters constituted a disruption to maritime commerce. The Court reasoned that the jurisdictional inquiry should focus on what disruptive impact the activity <u>could</u> have, not on the situation that actually occurred. <u>Id.</u> The Eleventh Circuit held that because the fire aboard the docked vessel could have spread to other vessels and could have resulted in the obstruction of a navigable waterway, the fire constituted a potential disruption to maritime commerce. <u>Id.</u> Here, regardless of whether plaintiff's activity actually caused a disruption to maritime commerce, because of the potential danger that the malfunctioning Sea Doo <u>could</u> have caused to maritime activities, it had a potentially disruptive impact on maritime commerce. See also, <u>Mink</u>, 29 F.3d at

---

has a connection with maritime activity. <u>Souther</u> involved a water-skier who sued a boat driver for negligently causing water to spray in his face and cause him injury. <u>Id.</u> at 152. The <u>Souther</u> court held that to hold the boat driver liable under admiralty law, he must have violated some navigation rule. <u>Id.</u> at 153. <u>Souther</u> is distinguishable because it involves a different type of tortfeasor – a fellow boater rather than a land-based repair and service provider as here. If the Court were to accept plaintiff's contention that <u>Souther</u>'s analysis is appropriate under this set of facts, then no case where the negligent maintenance of a water vessel causes an injury would ever fall under admiralty jurisdiction because there would never be a navigational error involved in such a circumstance – a result wholly inconsistent with the Eleventh Circuit's decision in <u>Mink</u>.

7

1546 (noting that injured passenger could have distracted boat driver and directly or indirectly interfered with vessel's navigation, resulting in potential disruption to maritime commerce).  Thus, both the location test and the connection test are satisfied by the allegations of plaintiff's complaint and the Court therefore finds that plaintiff's tort claim (Count I) sounds in admiralty.

### 2. Admiralty Jurisdiction Over Count II (Contract Claim)

Plaintiff additionally asserts the contract claim does not have a substantial relationship to maritime activity.  However, "[a] contract to repair a vessel invokes admiralty jurisdiction." Diesel "Repower," Inc. v. Islander Invs., Ltd., 271 F.3d 1318, 1322-23 (11th Cir. 2001) (citation omitted).   In Diesel, the Court found that where the defendant was hired to replace the engine, transmission and propulsion system of plaintiff's vessel, the work constituted a "repair" to the vessel. Id.  The plaintiff claimed the defendant breached his contract with the plaintiff, alleging that the defendant installed a faulty propulsion system. Id. at 1323.  The Court held that because the case involved a vessel repair contract, admiralty jurisdiction was present. Id.  Plaintiff has cited no authority and offers no argument to the contrary.  Based on the authority of Diesel,[4] the Court has determined that the contract claim sounds in admiralty.

---

[4]   See also, In re Keys Jet Ski, Inc., 893 F.2d 1225, 1230 (11th Cir. 1990) (holding a jet ski is a vessel within the meaning of 1 U.S.C. § 3).

8

**B.  Application of "Saving to Suitors" Clause**

The only basis for removal cited by defendant is the Court's admiralty jurisdiction[5] and, if heard on the Court's admiralty side, a trial by jury would not be available.  In re Graham, 747 F.2d 1383, 1387 (11th Cir. 1984) (citing Parsons v. Bedford, Breedlove, and Robeson, 28 U.S. 433, 447 (1830) for principle that trial by jury is available for suits at common law as opposed to suits brought in equity or admiralty).  However, while federal courts have exclusive admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333(1), that very statute "saves to suitors 'all other remedies to which they are otherwise entitled.'" Suzuki of Orange Park, Inc. v. Shubert, 86 F.3d 1060, 1063 (11th Cir. 1996) (citing 28 U.S.C. § 1333(1)).  Thus, a party may file an *in personam* admiralty complaint in state court where the plaintiff can then preserve common law remedies such as a trial by jury.  Id. ; see also, Sebastian Tow Boat & Salvage, Inc. v. Slavens, No. 6:02-cv-759-ORL31JGG, 2002 WL 32063121, at *1 (M.D. Fla. 2002) (explaining that "saving to suitors" clause gives state courts concurrent jurisdiction over admiralty actions brought *in personam*).  Barring the existence of another ground for removal, such an *in personam* complaint would not be removable to federal court.  Romero v. International Terminal Operating Co., 358 U.S. 354, 371-72 (1959); Oklahoma v.

---

[5]   The parties are both Florida residents so diversity jurisdiction is not available as a basis for removal and defendant has not claimed (and the Court does not find) that any federal questions are raised by the complaint.

Magnolia Marine Transport Co., 359 F.3d 1237, 1241 (10th Cir. 2004) ("Following Romero, '[c]ourts have consistently interpreted the 'savings clause' to preclude removal of maritime actions brought in state court and invoking a state law remedy, provided there is no independent basis for removal' such as the presence of a federal question or diversity of citizenship'") (citations and quotations omitted); In re Chimenti, 79 F.3d 534, 537-58 (6th Cir. 1996) (citing authority from the Fourth and Fifth Circuits and stating "it is settled that actions brought in state court under the 'saving to suitors' clause are not generally removable"); Baris v. Sulpico Lines, Inc., 932 F.2d 1540, 1543 (5th Cir. 1991) (citing Romero for proposition that an admiralty action cannot be removed absent diversity).

Here, defendant did remove the complaint, citing the Court's admiralty jurisdiction as grounds. Plaintiff, who requested a jury trial in his complaint, then timely moved to remand. However, in his motion, plaintiff argued only that the case did not sound in admiralty and was instead a garden variety cause of action sounding in negligence and breach of contract. As stated above, the Court finds this case does sound in admiralty and, had plaintiff elected to do so, he could have filed it here under this federal court's original admiralty jurisdiction instead of in state court.[6] Thus, this case presents the question of whether an admiralty case

---

[6] As stated above, had he done so, such action would be tried to the bench without a jury.

improperly removed to federal court must be remanded where plaintiff filed a motion to remand, but failed to raise what would have been a valid "saving to suitors" argument as grounds for remand.

There is some authority to suggest that the improper removal of an admiralty case implicates the federal court's subject matter jurisdiction and that an improperly removed admiralty case must be remanded no matter when the issue arises. See, e.g., J. Aron & Co. v. Chown, 894 F.Supp. 697 (S.D.N.Y. 1995) (remanding for lack of subject matter jurisdiction more than one year after removal of state court common law action upon finding removal was a nullity where only basis for federal jurisdiction was admiralty). Neither the Court nor the parties found any Eleventh Circuit authority directly on point. However, the Eleventh Circuit has recently explained that subject matter and removal jurisdiction "are not one and the same." Cogdell v. Wyeth, 366 F.3d 1245, 1247 (11th Cir. 2004). Rather, a court's subject matter jurisdiction defines "the nature of the case and the type of relief sought [as well as] the extent to which a court can rule on the conduct of persons or the status of things" id., whereas removal jurisdiction encompasses those cases which a defendant has removed "to the proper federal court" from state court and over which the federal court could have had "original jurisdiction to entertain the lawsuit." Id. at 1248.  A key distinction between subject matter jurisdiction and removal jurisdiction is that defects in subject matter jurisdiction are not waivable whereas a

defect in removal jurisdiction may be waivable, unless it is the Court's original jurisdiction to entertain the suit that is at issue. Id. at 1249. See also, Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702 (1972) (holding that lack of removal jurisdiction is a procedural defect that can be waived); In re Digicon Marine, Inc., 966 F.2d 158, 160 (5th Cir. 1992).

Here, the Court has determined that it did have original jurisdiction to hear this suit because plaintiff's claims sound in admiralty and could have been filed here originally. Thus, the defect in removal- - that plaintiff's complaint was not removable because the saving to suitors clause permitted plaintiff to maintain this action in state court- - is a waivable defect, not implicating the Court's subject matter jurisdiction. See Joe Boxer Corp. v. Fritz Transp. Int'l, 33 F.Supp.2d 851, 857 (C.D. Cal. 1998) ("The improper removal of a case filed in state court under the saving to suitors clause is not a lack of subject matter jurisdiction; accordingly, it is subject to the 30 day time limit for remand motions."); Dao v. Knightsbridge Int'l Reinsurance Corp., 15 F.Supp.2d 567, 572 (D.N.J. 1998) (holding that "removal in violation of Romero is a *waivable defect in removal*, not a non-waivable limit on the district court's subject matter jurisdiction).

Having determined that the defect is waivable however, does not fully answer the question because, unlike in Joe Boxer or Dao, here plaintiff did timely file a motion to remand, arguing that the Court's admiralty jurisdiction was not

implicated by the causes of action raised by his complaint.  The remaining issue to be addressed therefore, is whether plaintiff has preserved his right to assert a removal defect based on the non-removability of an admiralty complaint which invokes a state court remedy when he has not specifically asserted that issue but only attacked (unsuccessfully) the Court's admiralty jurisdiction over the case.  While the Court did not find (and the parties did not cite) any Eleventh Circuit authority on point, other courts that have addressed the issue have held that the district court may only remand for procedural grounds timely raised in a motion to remand.  For example, in Denman v. Snapper Divison, 131 F.3d 546, 548 (5th Cir. 1998), the Fifth Circuit found the plaintiff "failed to make the proper objection to removal" when he moved to remand his case back to state court on the grounds that the district court lacked jurisdiction because of the presence of a non-diverse defendant when the plaintiff instead should have argued that one of the defendants was an in-state defendant who could not remove. Likewise, in Concorde Financial Corp. v. Value Line, Inc., 2004 WL 287658 (S.D.N.Y. 2004), the district court denied a motion to remand where the plaintiff belatedly raised potentially meritorious grounds for remand after raising different, unmeritorious, grounds in its motion.  In doing so, the Concorde Financial court cited "a line of authority" from the Fifth and Ninth Circuits and two district courts "which states that a district court has no power to remand a case to state court on the basis of a defect in the

13

removal procedure raised for the first time more than thirty days after removal even when a timely petition for remand has been made on other grounds." Concorde Financial, 2004 WL 287658, *3.  See also, Lee v. Pineapple Management Servs., Inc., 241 F.Supp.2d 690, 695 (S.D. Miss. 2002) (denying motion to remand where plaintiff's objection based on fraudulent joinder was insufficient to preserve objection based on the in-state defendant rule).  But see Tennessee Gas Pipeline Co. v. Continental Casualty Co., 814 F.Supp.2d 1302, 1310 (M.D. La. 1993) (finding no authority to prevent a party from amending a motion to remand to assert a new ground and therefore finding it appropriate to address plaintiff's forum selection clause argument, raised for the first time in the plaintiff's brief solicited following the filing of the original motion to remand).  Based on the authorities cited above, and especially where plaintiff has not moved to amend his motion and has not even argued that he should be entitled to do so, the Court finds it cannot now remand this case to state court based on the "saving to suitors" clause, notwithstanding that the case was improperly removed in the first place.  This case will therefore remain in this Court, to be heard in admiralty.

14

### III.  Conclusion

Accordingly, it is hereby

**ORDERED**:

1. Plaintiff's motion to remand (Doc. 6) is **DENIED**.

2. No later than **January 10, 2006**, the parties shall confer and file a Case Management Report (the form of which is attached).  Additionally, at the November 4, 2005 telephone hearing, upon agreement of plaintiff, defendant's counsel stated that he would attempt to schedule an early mediation of this case before Terrance E. Schmidt, Esq.   Defendant's counsel shall promptly file a notice stating when that mediation will occur (and the Court will enter an Order of Referral to Mediation upon review of the notice).

**DONE AND ORDERED** at Jacksonville, Florida this 12th day of December, 2005.

*[signature]*
TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies to:

counsel of record
w/attachment

15